IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
Civil Action No.: 1:26-cv-390

| | | |
|---|---|---|
| CHRISTY M. PAYNE,<br><br>Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES LLC, and SYNCHRONY BANK<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Christy M. Payne ("Plaintiff") brings this Complaint against Equifax Information Services LLC ("Equifax"), and Synchrony Bank ("SYNCB") (collectively, "Defendants"), for actual, statutory, and punitive damages, costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq*., arising out of Equifax's inaccurate reporting of Plaintiff as deceased on her consumer credit files and reports, its subsequent failure to reasonably reinvestigate Plaintiff's dispute of the same, and SYNCB's failure to investigate Plaintiff's disputes and accurately instruct Equifax to modify, delete, or permanently remove the false "deceased" notation and related account information on Plaintiff's credit reports.

## PRELIMINARY STATEMENT

1. Plaintiff's claims arise of Equifax's inaccurate credit reporting, wherein it reported Plaintiff as deceased on her credit files and reports, despite Plaintiff being alive. This false deceased information appeared on an account furnished by SYNCB. Plaintiff promptly notified Equifax of the error and provided detailed information disputing the inaccurate reporting. Despite receiving Plaintiff's disputes, Equifax failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and failed to conduct

reasonable investigations into Plaintiff's disputes, allowing the false "deceased" notation to remain on her credit files.

2. Accordingly, Plaintiff brings claims against Equifax for failing to follow reasonable procedures to assure the maximum possible accuracy of the contents of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. § 1681e(b), and for failing to conduct a reasonable reinvestigation to determine whether information Plaintiff disputed was inaccurate and record the current status of the disputed information, or delete the disputed information from Plaintiff's credit file and report(s), in violation of the FCRA, 15 U.S.C. § 1681i.

3. Plaintiff also brings claims against the Furnisher SYNCB for failing to reasonably investigate Plaintiff's disputes and review all relevant information provided by Equifax in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1). Despite notice that Plaintiff had been incorrectly listed as deceased, SYNCB failed to conduct lawful reinvestigations and continued to furnish false information to Equifax long after it knew, or should have known, the information was inaccurate.

4. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, and costs and attorneys' fees from the Defendants for their willful and/or negligent violations of the FCRA, 15 U.S.C. §§ 1681, et seq

## THE PARTIES

1. Plaintiff Christy M. Payne is a natural person who resides in Waynesville, North Carolina in Haywood County and is a "consumer" as that term is defined in 15 U.S.C. 1681a(c).

2. Defendant Equifax Information Services LLC ("Equifax") is a foreign corporation authorized to do business in the State of North Carolina, including in this District.

3. Equifax is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f). Equifax is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumers reports, as defined in 15 U.S.C. § 1681a(d) to third parties.

4. Defendant Synchrony Bank ("SYNCB") is a national banking association that furnishes consumer credit information to the major credit reporting agencies and conducts business throughout the United States, including in the State of North Carolina.

5. SYNCB is a credit grantor and "furnisher" of consumer information, as defined in 15 U.S.C. § 1681s-2(b).

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction conferred by 28 U.S.C. 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) since a material portion of the events or omissions giving rise to the claim occurred in this District.

## FACTS

### Summary of the Fair Credit Reporting Act

8. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

9. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personal, insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…" 15 U.S.C. § 1681(b).

10. The FCRA further requires that when preparing consumer reports a consumer reporting agency must follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

**<u>The Credit Bureaus' Processing of Credit Information</u>**

11. Major credit bureaus, including Equifax, regularly receive information from various sources around the country including banks, credit unions, automobile dealers, student loan providers, public information vendors, and others.

12. These sources are known as "furnishers" within the credit reporting industry and under the FCRA.

13. Equifax collects information from thousands of furnishers.

14. The process by which Equifax receives, sorts, and stores information is largely electronic.

15. Equifax takes the credit information reported by furnishers and creates consumer credit files.

16. Equifax maintains credit files on more than 200 million consumers.

17. Credit files are updated electronically by the furnishers to reflect new information regarding the reported accounts (sometimes referred to within the industry as "tradelines").

**<u>The Credit Bureaus' Method for Considering Consumer Credit Report Disputes</u>**

18. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

19. Consumer reporting agencies have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR

allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric- alpha language specific to the credit reporting industry.

20. Furnishers report credit information to Equifax through the use of coded tapes that are transmitted to Equifax on a monthly basis through software known as Metro 2.

21. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

22. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification (ACDV) electronic form.

23. The ACDVs have many fields in their body for use in effecting thorough and complete communication between data furnishers and the credit reporting agencies.

24. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

25. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

26. The data furnishers then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the dispute to determine whether the disputed credit

account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

27. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and returning the ACDV to the respective credit bureau(s) via e-OSCAR

**SYNCB Falsely Reports Plaintiff as Deceased**

28. Plaintiff is a Table Games Supervisor at Harrah's Cherokee Casino Resort and less than two (2) years away from retirement. She is currently purchasing her home.

29. On September 2, 2023, Plaintiff lost her husband, Jason Payne, to a sudden massive heart attack.

30. Plaintiff has several credit accounts with SYNCB including credit cards with Lowe's, Sam's Club, Belk and Mattress Firm.

31. Jason is only listed and associated with the Lowe's account.

32. In early 2024, Plaintiff contacted SYNCB to remove Jason from her Lowe's account as an authorized user. Plaintiff provided SYNCB with the death certificate.

33. In January 2026, Plaintiff contacted SYNCB again to remove Jason from her Lowe's account as an authorized user. Once again, Plaintiff provided SYNCB with the death certificate.

34. However, upon information and belief, SYNCB did not remove her deceased husband from the account, but rather closed the accounts and listed her as deceased.

35. On or about March 31, 2026, Plaintiff attempted to use her Lowe's credit card but was unable to do so. She attempted to use her Sam's Club card too but was unable to do so. Plaintiff

contacted Lowe's and Sam's Club and was informed that SYNCB had closed all four (4) accounts and listed Plaintiff as deceased.

36. Plaintiff discovered on her Equifax credit report that all of her SYNCB accounts were closed and that she was being reported as deceased.

**Plaintiff Disputes to Equifax**

37. On or about April 29, 2026, Plaintiff contacted Equifax to dispute the inaccurate reporting of her SYNCB accounts on her credit report.

38. On or about May 14, 2026, Equifax communicated to Plaintiff that it had concluded it investigation and confirmed that the disputed deceased reporting of Plaintiff was in fact accurate.

39. On or about June 13, 2026, Plaintiff submitted another dispute to Equifax explaining the inaccurate reporting of her SYNCB accounts on her credit report.

40. As of the filing of this lawsuit, Equifax continues to inaccurately report that Plaintiff is deceased.

**Plaintiff Suffered Actual Harm**

41. SYNCB has failed to correct and Equifax continues to report false and derogatory information on Plaintiff's credit report, including notations that Plaintiff is deceased, despite being notified that this information was false.

42. Plaintiff attempted to resolve these matters with Defendants and her credit was significantly damaged by Defendants' failures to correct the inaccurate reporting.

43. The false "deceased" designation is the only derogatory information appearing on Plaintiff's credit reports.

44. As a result of the defamatory nature of the inaccurate credit reporting, Plaintiff has suffered damages, including, but not limited to:

a. Denial of credit opportunities, including the inability to co-sign for her son's college student loans and having to withdraw, prematurely, $40,000 from her late husband's 401k to pay for her son's tuition;

b. Lack of a credit score from Equifax;

c. Stress related to renewing her Gaming Commission license and this negative reporting affecting her employment;

d. Chilled from applying for credit;

e. Out-of-pocket expenses related to communication and dispute costs;

f. Loss of time attempting to cure the error; and,

g. Mental anguish, stress, aggravation, and other related impairments to the enjoyment of life.

**Defendants' Conduct was Willful**

45. The FCRA allows for a remedy for a "willful" violation. A willful act or violation includes, "not only knowing violations of [the statute], but reckless ones as well." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, at 57 (2007). A "reckless" action includes conduct whereby "the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id*. at 69.

46. Proof of willfulness includes, for example, "evidence that other consumers have lodged complaints similar to" the one made by the Plaintiff and a failure to make the correction right away. *Dalton*, 257 F.3d at 418; *Saunders v. Branch Banking & Trust Co. of Va*., 526 F.3d 142, 151 (4th Cir. 2008).

47. As detailed above, the FCRA section at issue here, and informative guidance, have been around now for over 50 years. The language of § 1681e(b) has not changed. The Credit

Bureaus' dispute investigation obligations under § 1681i(a) have not changed. The FCRA's caution of Defendants' "grave responsibilities" to ensure accuracy has not changed.

48. Like Equifax, SYNCB has had actual notice of established law defining its duties under § 1681s-2(b). The leading case in this regard is the Fourth Circuit's decision, *Johnson v. MBNA Am. Bank, NA*. 357 F.3d 426 (4th Cir. 2004). *Johnson* and its progeny long ago established that the § 1681s-2(b)(1)(A) directive to furnishers to "conduct an investigation with respect to the disputed information" required a "reasonable investigation," that is, a "careful" or "searching inquiry," as opposed to a "superficial" one, "to determine whether the disputed information can be verified." *Johnson*, 357 F.3d at 430–31.

49. Defendants' procedures imposed on the Plaintiff and similarly situated consumers are an unjustifiable and unreasonable risk of harm that could have been mitigated or avoided with just modest imposition.

## CLAIMS FOR RELIEF

### COUNT I:
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy
### (First Claim For Relief Against Defendant Equifax)

50. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-49 as if fully stated herein.

51. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

52. On multiple occasions in 2026, Defendant Equifax prepared patently false consumer reports concerning Plaintiff.

53. Despite actual and implied knowledge that the information in Plaintiff's credit files was inaccurate, the Defendant Equifax readily sold such false reports to one or more third-parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

54. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

55. As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, difficult in obtaining credit; unable to secure student loan financing for her son; lack of a credit score; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to her credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; and humiliation and embarrassment.

56. Defendant Equifax's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

57. Plaintiff is entitled to recover attorney's fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II:**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Second Claim for Relief Against Defendant Equifax)**

58. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-57 as if fully stated herein.

59. The FCRA mandates that a CRA conduct an investigation of the accuracy of information "[i]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. *See* 15 U.S.C. § 1681i(a)(1). The FCRA imposed a 30-day time limitation for the completion of such an investigation. *Id.*

60. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681i(a)(5)(A).

61. On multiple occasions, Plaintiff initiated disputes with Defendant Equifax requesting that they correct or delete the inaccurate information.

62. Either Defendant Equifax conducted *no* reinvestigation of Plaintiff's disputes, or such reinvestigations were so shoddy and unreasonable as to allow patently false and highly damaging information to remain in Plaintiff's credit files and credit reports.

63. Defendant Equifax violated 15 U.S.C. § 1681i by failing to delete or correct inaccurate information in Plaintiff's credit files after it received multiple notices of such inaccuracies; by failing to conduct a lawful reinvestigation on numerous occasions of the disputed information; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit files.

64. As a result of Defendant Equifax's conduct, action, and inaction, Plaintiff has suffered a range of actual damages including, without limitation, difficult in obtaining credit; unable to secure student loan financing for her son; lack of a credit score; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment

to his credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; and humiliation and embarrassment.

65. Defendant Equifax's conduct, action, and inaction was willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

66. Plaintiff is entitled to recover attorney's fees and costs from Defendant Equifax in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III:**
**15 U.S.C. § 1681s-2(b)(1)(A) and (B)**
**Failure to Conduct a Reasonable Investigation of the Disputed Information and Review all Relevant Information Provided by the Consumer**
**(First Claim For Relief Against Furnisher Defendant SYNCB)**

67. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-66 as if fully stated herein.

68. SYNCB published the aforementioned disputed information of Plaintiff being deceased to Defendant Equifax, despite the fact that Plaintiff is alive.

69. On one or more occasions, by example only and without limitation, SYNCB violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Plaintiff's disputes.

70. On one or more occasions, by example only and without limitation, SYNCB violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the Defendant Equifax.

71. SYNCB violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes of the aforementioned inaccurate information; by failing to review all relevant information regarding the same; and by failing to permanently and lawfully correct its own internal

records to prevent the re-reporting of the inaccuracies of the false information to Defendant Equifax.

72. As a result of SYNCB's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Plaintiff has suffered a range of actual damages including, without limitation, difficult in obtaining credit; unable to secure student loan financing for her son; lack of a credit score; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to his credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; and humiliation and embarrassment.

73. SYNCB's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

74. Plaintiff is entitled to recover attorney's fees and costs from SYNCB in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT IV:
## U.S.C. § 1681s-2(b)(1)(E)
## Failure to Accurately Correct and Update or Delete Plaintiff's Information After Receiving Plaintiff's Disputes from Defendant Equifax
## (Second Claim For Relief Against Furnisher Defendants)

75. Plaintiff re-alleges and incorporates the allegations set forth in Paragraphs 1-74 as if fully stated herein.

76. SYNCB violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to accurately correct and update or delete Plaintiff's information after receiving Plaintiff's dispute from Defendant Equifax. This failure to correct Plaintiff's information resulted from SYNCB's failure to investigate as articulated herein, and after SYNCB received notice of Plaintiff's disputes from Defendant Equifax.

77. As a result of SYNCB's violations of 15 U.S.C. § 1681s-2(b)(1)(E), Plaintiff has suffered a range of actual damages including, without limitation, difficult in obtaining credit; unable to secure student loan financing for her son; lack of a credit score; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; economic loss; detriment to his credit rating; and emotional distress, including, but not limited to, stress; anxiety; loss of sleep; and humiliation and embarrassment.

78. SYNCB's conduct, action, and inaction was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

79. Plaintiff is entitled to recover attorney's fees and costs from SYNCB in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## JURY DEMAND

80. Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

## PRAYER FOR RELIEF

81. WHEREFORE, the Plaintiff demands judgment and actual, statutory, and punitive damages against Defendants, jointly and severally; for her attorneys' fees and costs; for pre-judgment and post-judgment interest at the legal rate, and such other relief the Court does deem just and proper.

Dated: November 13, 2026,

Respectfully submitted,
*/s/ Ian E. Vance*
Ian E. Vance
N.C. State Bar No. 60056
MAGINNIS HOWARD

7706 Six Forks Road, Suite 101
Raleigh, North Carolina 27615
Tel: 919-526-0450
Fax: 919-882-8763
ivance@carolinalaw.com
*ATTORNEY FOR PLAINTIFF*